```
                   UNITED STATES DISTRICT COURT
                       DISTRICT OF VERMONT

UNITED STATES OF AMERICA    :
                            :
     v.                     :       File No. 1:06CR99-01
                            :
STEPHEN H. WALTER           :
_____:
```

## RULING ON MOTION TO SUPPRESS
(Paper 10)

In a superseding indictment filed December 22, 2006, defendant Stephen H. Walter was charged with possession of an unregistered sawed-off shotgun (Count I), possession of ten firearms (including the sawed-off shotgun) as a user of marijuana (Count II), and possession with intent to distribute marijuana (Count III), together with allegations seeking forfeiture (Count IV and V).  See generally Superseding Indictment (Paper 6).

The defendant seeks to suppress articles seized when police executed a search warrant issued by a Vermont District Court judge.  He argues the issuance of the warrant was not supported by probable cause.  See Paper 10 at 3.  He also claims the information set forth in the officer's affidavit which accompanied the application for the search warrant was stale and contained material omissions.  See Paper 10 at 4-5.

On May 30, 2007, the Court held an evidentiary hearing on the defendant's motion.  Upon consideration of the testimony and

evidence presented at the hearing, and for the reasons set forth below, the Motion to Suppress is DENIED.

## I. Background

On August 12, 2006, Vermont District Court Judge Linda Levitt issued a search warrant authorizing officers to search defendant's residence, "54 Spruce Street Apartment #6 and any sealed container" located therein.  The warrant authorized officers to search for, inter alia, "[c]ontrolled substances, paraphernalia involved in the use and distribution of controlled substances, scales, locked containers, ledger books, telephone books, pagers, cell phones, palm pilots, laptop/computers and any attachments, receipts, drug customer lists and other documents relating to the transportation, ordering, purchasing and distribution of controlled substances."  See Search Warrant (Gov't Ex. 1).

Officer Brandon King, of the University of Vermont Police Department, applied for the search warrant on August 12, 2006. See Application for Search Warrant with Affidavit (appended to Paper 13).  In support of the application, Officer King reported that, on June 23, 2006, University of Vermont police "obtained information from a source of information (SI) regarding a male subject selling marijuana in the Burlington area" and that, on June 23, the SI had "paid up to $40.00 dollars [sic] for an

eighth of an ounce of marijuana."  Officer King's Affidavit (appended to Paper 13) at ¶ 1.  The SI further indicated the seller, "Steve," "lives in a large white apartment building with red trim on the corner of North Winooski Avenue" and drives a "black Mitsubishi VR4 with Vermont license plates."  King Affidavit at ¶ 3.

Upon receiving this information, Officer King and another officer canvassed the area identified by the SI and found a matching black Mitsubishi parked at a matching white apartment building at 54 Spruce Street.  After running the registration, he found the registered owner of the vehicle was the defendant, who resided at 54 Spruce Street, Apartment #6.  See King Affidavit at ¶ 4.

Over the next several weeks, officers unsuccessfully attempted to contact the defendant at his residence.  Then, on August 12, 2006, Officer King observed the black Mitsubishi parked at 54 Spruce Street.  He knocked on the door of Apartment #6, and Nicole L. Wright opened the door.  See Gov't Ex. 2 (showing the door to Apartment #6 with "House Rules" signed by "Steve + Nicole").  King immediately noticed a heavy odor of burnt marijuana emanating from the apartment.  When Officer King asked if the defendant was home, Wright first indicated he was sleeping, and then went back inside the apartment to wake him.  See King Affidavit at ¶ 6.

Moments later, the defendant came to the door.  Officer King asked if he could come inside the apartment to speak to him.  The defendant refused, indicating he wanted to see a warrant before he would permit Office King entry.  See King Affidavit at ¶ 7.

At that point, other officers secured the scene, and Officer King left to apply for a search warrant.  Although the SI had indicated that "Steve" lived at the corner of "North" Winooski Avenue, the search warrant application which accompanied Officer King's affidavit correctly referred to 54 Spruce Street as located at the intersection with "South" Winooski Avenue. Compare Application for Search Warrant at 1A with King Affidavit at 4, ¶ 3 (both appended to Paper 13).  When King returned and executed the warrant, officers discovered packaged marijuana and other items associated with drug distribution.

In addition, officers observed a number of firearms throughout the apartment, including what appeared to be a short-barrel, sawed-off shotgun.  Officer King contacted an Alcohol, Tobacco, Firearms and Explosive ("ATF") agent, who advised him to seize only the short-barrel shotgun.

On the basis of the evidence recovered, the defendant was arrested on state drug charges.  The evidence seized also forms the basis for the federal charges described in the federal Superseding Indictment.

Under 13 V.S.A. § 7554, a judicial officer may set the conditions for release of an accused prior to trial. As used in § 7554, "judicial officer" includes "a clerk of a superior or district court." 13 V.S.A. § 7554(f). After the defendant's arrest and processing, the Clerk of the Vermont District Court set the conditions for the defendant's release. Among those conditions, the defendant was instructed he "must make arrangement [sic] to turn in all firearms." Conditions of Release Order (Gov't Ex. 3). Rather than stay in jail on the state drug charges, the defendant assented to the conditions, signed the form and was released from custody. At the hearing, defendant's father, a former patent attorney, testified his son had signed the Conditions of Release Order without consulting him.

## II. Discussion

The defendant seeks to challenge the presumptive validity of Officer King's search warrant affidavit pursuant to Franks v. Delaware, 438 U.S. 154 (1978). "A defendant is permitted to challenge the veracity of a search warrant in limited circumstances," including "where the affidavit in support of the search warrant is alleged to contain deliberately or recklessly false or misleading information." United States v. Canfield, 212

F.3d 713, 717 (2d Cir. 2000) (citing Franks v. Delaware, 438 U.S. at 154).

The defendant argues the UVM police had reason to believe the defendant actually lived at an address other than 54 Spruce Street in Burlington. At the hearing, the parties stipulated that, as of May 2006, the defendant lived at 61 Hyde Street in Burlington. Even if true, that fact does not render false Officer King's statement that, in August 2006, the defendant maintained a residence at 54 Spruce Street. Furthermore, the defendant's first name was present on a sign on the door to Apartment #6, and he was found sleeping in that location.

The defendant also argues that the fact that the SI was given immunity from prosecution for identifying him as a drug dealer renders that information reckless or deliberately false. When an affidavit in support of a search warrant is based on information from a confidential informant, the court looks at the totality of the circumstances to determine its reliability. See Canfield, 212 F.3d at 718 (citing Illinois v. Gates, 462 U.S. 213 (1983)).

In this case, the SI indicated that "Steve," who was described as living in the vicinity of Spruce Street and who drove a black Mitsubishi, had sold him marijuana. Although Officer King recounted in his Affidavit that the SI indicated the location of 54 Spruce Street was at the intersection of "North"

Winooski Avenue, he correctly identified the "white apartment building with red trim located on the corner of South Winooski and Spruce Streets" in his application.  In addition, upon investigation of the SI's information, Officer King found the defendant and his car in the identified area.  Accordingly, the information about which the defendant complains was not deliberately false or misleading.  See Franks, 438 U.S. at 171 ("Allegations of negligence or innocent mistake are insufficient" to require an evidentiary hearing permitting a defendant to attack an affidavit's "presumption of validity").

The defendant also argues Officer King's affidavit did not establish probable cause for the issuance of a search warrant.  He maintains the SI's statement that the defendant had sold him marijuana on June 23, 2006, was stale by August 12, 2006.

The question is whether, upon review of the affidavit, Judge Levitt "had a substantial basis to believe that the goods in question would probably be found" at 54 Spruce Street, Apartment #6.  United States v. Martin, 157 F.3d 46, 52 (2d Cir. 1998).  As an initial observation, the Court notes that where, as here, an informant admits to participation in the crime under investigation, there is generally no need to show past reliability.  See United States v. Gagnon, 373 F.3d 230, 236 (2d Cir. 2004).  In addition, an interval of weeks or months between a described act and the application for a warrant does not

automatically render the information stale.  See United States v. Smith, 9 F.3d 1007, 1014 (2d Cir. 1993); accord United States v. Rowell, 903 F.2d 899, 903 (2d Cir. 1990) (statements several years old not "stale").

Furthermore, Officer King's independent corroboration of the information provided by the SI, and the fact that immediately prior to applying for the warrant, he noticed the smell of burnt marijuana emanating from the apartment, provide sufficient, timely probable cause to support the warrant's issuance.  See United States v. Cephas, 254 F.3d 488, 495 (4th Cir. 2001) (The "strong smell of marijuana coming from the apartment" "would almost certainly have given Sergeant Shapiro probable cause to believe that contraband-marijuana was present in the apartment."); United States v. Harwell, 426 F. Supp. 2d 1189, 1196 (D. Kan. 2006) ("The odor of burning marijuana emanating from the open front door . . . would lead a reasonable officer to believe that marijuana was probably present in the residence.").

Finally, the defendant argues he was unlawfully coerced into turning over his weapons as a condition of his release on the state charges filed after his arrest on August 12, 2006.  The fact that the defendant felt pressured to turn over his weapons so that he could obtain conditional release does not render his consent coerced under the Fourth Amendment.  See, e.g., United States v. Medina, 301 F. Supp. 2d 322, 330 (S.D.N.Y. 2004).

8

"Consent to a search has been found despite formal arrest, . . . and such additional aggravating circumstances as handcuffing of a suspect, the presence of six law enforcement officers in his home, and their assurance that they would remain indefinitely and secure a search warrant if consent were withheld." United States v. Garcia, 56 F.3d 418, 423 (2d Cir. 1995) (citations omitted). Accordingly, the mere fact that the defendant was required to surrender his firearms to obtain his release from custody does not render his consent to that condition of release constitutionally infirm.

The Motion to Suppress is DENIED. This case shall be placed on the August 8, 2007 trial calendar.

SO ORDERED.

Dated at Brattleboro, Vermont, this 20th day of June, 2007.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge